IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

AUBRINA BOWENS,                         )
                                        )
        Plaintiff,                      )
                                        )
vs.                                     )   CIVIL ACTION NO. 20-532-CG-B
                                        )
ESCAMBIA COUNTY BOARD OF                )
EDUCATION and JOHN KNOTT,               )
                                        )
        Defendants.                     )

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Defendants' motion for summary judgment
(Doc. 28), Plaintiff's opposition thereto (Doc. 34), Defendants' reply (Doc. 38),
Defendants' objection and motion to strike (Doc. 37), and Plaintiff's response to the
objection and motion to strike (Doc. 39). For the reasons explained below, the Court
finds that Defendants' motion to strike should be denied but that Defendants'
motion for summary judgment should be granted.

## FACTS

Plaintiff, Aubrina Bowens, filed her complaint on November 9, 2020,
asserting claims of racial discrimination and retaliation, under both Title VII and §
1981. (Doc. 1).  Bowen's claims arise from her employment with the Escambia
County Board of Education ("the Board"), and she has asserted her claims against
the Board and the Superintendent of the Board, John Knott.

Bowens, an African American, was hired as a probationary teacher assigned

1

to the Board's Alternative School in August 2016. (Doc. 30-1, PageID.159).  The Alternative School is a school site where students with disciplinary problems are temporarily assigned in lieu of expulsion or suspension. (Doc. 30-1, PageID.159). The Alternative Programs for Escambia County Schools consisted of the COMPASS Program (for adjudicated students or students with mental health issues that kept them from thriving in a regular school setting), the STAR Program (a dropout prevention program) and the Alternative School. (Doc. 30-1 PageID.159). Probationary teachers are non-tenured teachers who are employed at-will and become tenured after their third year of employment with a school system. (Doc. 30-1, PageID.158).  Teacher's duties in Escambia County are not limited to just teaching in the classroom or directly supervising students, as teachers can be assigned to various duties, including serving as administrative designees, administering tests, or performing other tasks as assigned under the discretion of their supervisor and the needs of their school or school system. (Doc. 30-1, PageID.158).

Ashley Knowles, a white female, was hired in 2016 as a probationary teacher in  the STAR/COMPASS Alternative Program housed at Escambia County High School. (Doc. 30-1, PageID.160).  The Board voted not to renew Knowles on May 21, 2018. (Doc. 30-1, PageID.171).

Farrah McGill, a white female, was hired in November 2015 as a probationary teacher in the STAR/COMPASS Alternative Program housed at

Escambia County High School on November 2015. (Doc. 30-1, PageID.160). McGill was not renewed at the end of the 1017-2018 school year. (Id.).

Terrance Hall, an African American male, was hired as a probationary teacher assigned to the Alternative School in January 2018. (Doc. 30-1, PageID.160). He was not renewed at the end of the 2017-2018 school year. (Id.).

As of the 2017-2018 school year, Kellie Steele, a white female, was a tenured employee who had been employed by the Board since 2007. (Doc. 30-1, PageID.160, 164). Steele previously served as the librarian at AC Moore Elementary School but was transferred to Rachel Patterson Elementary School when AC Moore School was closed. (Doc. 30-1, PageID.160-61). Rachel Patterson School already had a librarian so, Steele performed duties as a Resource Teacher who "floated" to help in different capacities as needed. (Doc. 30-1, PageID.161). Steele worked at the Alternative School and at other school locations working collaboratively with other teachers developing the curriculum and schedules for the new Odysseyware program in addition to working with students at the Alternative School. (Doc. 30-1, PageID.165).

Yolanda Walters was assigned to the STAR/COMPASS program at Escambia County High School during the 2017-2018 school year and was already a tenured employee. (Doc. 30-1, PageID.161). Walters was transferred out of the program into a regular teaching position at Escambia County High School. (*Id.*).

In November 2017, Bowens started emailing Payroll and Benefits

Bookkeeper, Teresa Armstrong, asking about an increase in pay for receiving her master's degree in August 2017. (Doc. 30-6, PageID.472-73). Armstrong responded that the State Department of Education did not recognize Bowens' higher degree until October 31, 2017, and that her salary would be adjusted accordingly effective November 1, 2017. (*Id.*). In contrast, Knowles had earned a master's degree on August 9, 2016. (Doc. 30-1, PageID.163). When Knowles was hired on August 15, 2016 the State Department of Education regulations stated that an increase was to be paid when a teacher "earned" the degree and so, Knowles was paid in accordance with having that degree from the time she was hired. (*Id.*). In 2017, the "Implementation Guidelines" were changed to state that an educator was eligible for the increase when she has earned an advanced degree <u>and</u> the degree is recognized by the State Department of Education. (Doc. 30-1, PageID.164, Doc. 30-5, PageID.469).

Teachers in the Escambia County school system are paid over a 12-month period even though they only work 9 months. (Doc. 30-1, PageID.162). Teacher salaries are calculated by dividing the annual pay by the number of days they work (187 days for the 2017-2018 school year and spreading it out over 12 months, which usually results in a rate of 15.583 days per month. (*Id.*). During the 2017-2018 school year, Bowens worked 62.5 days at bachelor's pay and (with her master's degree recognized on November 1, 2017) 124.5 days at master's pay. (*Id.*).

Because Bowens continued to question her pay, Superintendent Knott met

4

with Bowens to discuss her pay. (Doc. 30-1, PageID.163).  Bowens reportedly acknowledged that her pay was correct. (*Id*.).  At the end of the meeting Bowens mentioned an incident that occurred at school with her son. (*Id*.).  Knott understood that the incident had been investigated and addressed by the administration at her son's school. (*Id*.). According to Knott, the incident was never mentioned to him again by Bowens or Bowens' husband. (*Id*.).

At some point during the 2017-2018 school year, Bowens had trouble accessing the computer system used to input and review student grades. (Doc. 30-4, PageID.379-380).  Bowens emailed the supervisors Sarah Watkins and Amy Cabaniss about the problem (*Id*. at 380). Cabaniss reported the issue to the assistant superintendent and the superintendent. (Doc. 30-3, PageID.255).  The problem was that students at the Alternative school are still assigned to their home school and their course work still populates with their home schoolteacher and the program would not allow a second teacher to be assigned. (Doc. 30-3, PageID.253, 255-256). Either Cabaniss or Jones explained to Bowens why she did not have access. (Doc. 30-3, PageID.258).

In April 2018, Bowens also brought to the attention of her supervisors and sent emails complaining about teaching assignments she was given in comparison to the duties of another teacher, Kellie Steele. (Doc. 30-1, Page ID.164; Doc. 30-4, PageID.329-330; Doc. 35-7, PageID.585).  Bowens complained that she was required to teach classes while Steele worked in the office, ran errands, and built courses on

5

Odysseyware system.  (Doc. 30-1, Page ID.164; Doc. 30-4, PageID.330; Doc. 35-7, PageID.585). The Odyssey system is an online platform for virtual education. (Doc. 30-3, PageID.262).  Bowens testified that they did nothing about her complaints. (Doc. 30-4, PageID.330).  Cabaniss called a faculty meeting on Monday April 16, 2018 and met with Bowens and two other staff (because Bowens had reported that she "and other staff" had the issue) and she explained to them about the Odysseyware software building program. (Doc. 30-1, PageID.165; Doc. 30-3, PageID.261).  Cabaniss testified that she discussed the possibility of getting subs to help cover classes and asked if they wanted to rotate to finish the task of completing building the courses, but they said "no" to the subs and to rotating the work. (Doc. 30-3 PageID.262). Cabaniss testified that she had selected Steele to work on the Odysseyware project because Cabaniss was the supervisor over and met regularly with the librarians and Steele presented technology skills that were needed to help develop the courses. (Doc. 30-3, PageID.267-268).  Steele had been a teacher since January 2007 and had extensive knowledge and ability working with various educational software programs. (Doc. 30-1, PageID.165).  Steele was hired as a "teacher" not a Social Science teacher and her work on the Odysseyware program in the Alternative School was a continuation of the work she had begun before she was transferred. (Doc. 30-1, PageID.167).  Being assigned to work on the Odysseyware program is not a promotion and does not lead to an increase in compensation or promotional opportunities. (Doc. 30-1, PageID.167). The same is true regarding

6

administering state mandated tests. (*Id*.).

On May 7, 2018, Bowens emailed the Board complaining about the duties given to or work done by Steele. (Doc. 35-3, PageID.576). Bowens requested in her email that someone be hired for building Odysseyware virtual school and summer school classes because it is unfair to Bowens and Mr. Hall that they have to carry the load of the Social Science teacher Mrs. Steele. (*Id*.).  The email does not mention race.

Funding for Bowens' position and the Alternative School and related programs in Escambia County comes from state-allocated funds and from local revenue funds. (Doc. 35-19, PageID.796, 800).  According to Cabaniss, the Alternative School was never in any danger of closing that she was aware of. (Doc. 35-16, PageID.677-678).  However, the COMPASS and STAR Programs were subject to reaching funding agreements each fiscal year and a separate Memorandum Agreement was reached with the State Department of Education for each of three years it was in place. (Doc. 30-1, PageID.169).  According to an official from the Alabama State Department of Education (ASDE), a verbal commitment had been given for funding for the STAR program for three years: fiscal years 2017-2019. (Doc. 35-17, PageID.745).  Individual agreements were entered into between the ASDE and the Escambia County Schools on October 25, 2016, November 9, 2017, and September 21, 2018, under which ASDE agreed in each to provide $300,000.00 from state funds to the Escambia County Schools. (Doc. 35-1,

PageID.565-573).  The first two agreements state that the funds are for the purpose
of STAR Academy. The third agreement states that the funds are for the purpose of
enhancing outcomes for At-Risk students. (*Id*.).  School systems have other fund
sources that can be used to implement programs such as STAR. (Doc. 35-17,
PageID.746). Local funds are mainly used in addition to the state funds. (*Id*.).

According to Knott, he had verbal conversations with the finance office at the
state department that indicated there would not be funding available to continue
the programs. (Doc. 35-19, PageID.808).  Knott was concerned that the funding for
the programs would be decreased. The Alternative School Programs are paid for out
of local funds and the amount of those funds changes from year-to-year. Knott also
reports that beginning in 2018, he had discussions with representatives from South
West Mental Health, which collaborates with the Board on the COMPASS Program,
and doubts had been raised about whether they were going to continue in their
partnership with the Board. If South West Mental Health did not continue to
collaborate, the program could not continue. (Doc. 30-1, PageID.169-170).

Knott discussed his concerns with Cabaniss. Knott reports that they knew
they would probably need to restructure the alternative programs and were
uncertain of many details. Because of their concerns Knott decided to recommend
that all non-tenured teachers in all of the alternative programs be non-renewed.
Bowens, McGill, Hall, and Knowles were all recommended for non-renewal. (Doc.
30-1 PageID.170-171). When a recommendation was made by Superintendent

Knott, the Board voted on it. (Doc. 35-19, PageID.772-773).

There were two tenured teachers, Yolanda Walters and Steele. Walters was transferred to a different teaching position at Escambia County High School. Steele indicated she would resign and submitted her letter of resignation on May 21, 2018. (Doc. 30-1 PageID.170-171).

Funding and agreements for the COMPASS, Alternative School, and STAR Programs were finalized allowing for them to continue for the 2018-2019 school year. (Doc. 30-1, PageID.171). The programs were combined and restructured to be all housed at the Alternative School for the 2018-2019 year. (Doc. 30-1, PageID.171). Bowens reports that, during the meeting in which she was informed she was being terminated, she was not informed that she could apply to another position. (Doc. 35-18; PageID.751). The positions for the restructured programs were posted and were subsequently filled. Bowens was aware of the job postings and did not apply for any of the available positions. (Doc. 30-1, PageID.171; Doc. 34, PageID.356).

## DISCUSSION

### A. Motion to Strike

Defendants move to strike evidence (Doc. 35-17, PageID.743-746) that purports to be responses from the Alabama State Department of Education but is only signed by Bowens' Attorney. (Doc. 37). At the summary judgment stage, a district court may consider inadmissible evidence "if the statement could be reduced

to admissible evidence at trial or reduced to admissible form. *Johnson v. State Farm Fire & Cas. Co.*, 2013 WL 4607548, at *6 (S.D. Ala. Aug. 29, 2013), appeal dismissed (Nov. 15, 2013) (citations omitted).  Rule 56 allows a party to object to material that "cannot be presented in a form that would be admissible in evidence."  FED. R. CIV. P. 56(c)(2) (emphasis added).  It does not require that they be presented in admissible form at the summary judgment stage. "Even unauthenticated or otherwise inadmissible evidence is properly considered on summary judgment so long as it can be reduced to admissible form." *Glovis Alabama, LLC v. Richway Transportation Servs. Inc.*, 2020 WL 3630739, at *9 (S.D. Ala. July 3, 2020) (citing *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005).  Here, Defendants' motion is denied as they have offered no reason why the evidence could not be authenticated and reduced to admissible form. In fact, Bowens has since filed a signed declaration by Ethan Taylor - the person who reportedly authored the information. The attempted authentication still does not fully identify Ethan Taylor – it does not indicate the basis of his knowledge such as his position at the Department of Education, but that could be remedied at trial.

**B. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.' " *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Anderson*, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-252.  The moving party bears the burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 524 (11th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." *Vega v. Invsco Group, Ltd.*, 2011 WL 2533755, *2 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

## C. Bowens' Claims

Bowens claims Defendants did not renew her teaching contract and treated her differently because of her race and in retaliation for her complaints of racial discrimination.  Defendants' motion asserts that Bowens cannot present substantial evidence of discrimination, cannot establish a *prima facie* case of discrimination or retaliation, and cannot present substantial evidence to establish that Defendants' proffered legitimate, non-discriminatory reasons for terminating plaintiff are pretextual. Bowens brings her claims under both Title VII and § 1981, but since they generally have the same requirements of proof and use the same analytical framework the Court will discuss them together. *Lee v. Safe-Dry Carpet & Upholstery*, 2021 WL 3829028, at *2 (11th Cir. Aug. 27, 2021) (citation omitted).

### 1. Racial Discrimination

A plaintiff may prove discrimination by relying on either direct, circumstantial, or statistical evidence.  *See Walker v. Nationsbank of Florida N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995).  Here, Bowens attempts to prove her claims through circumstantial evidence using the *McDonell Douglas* burden-shifting framework.

A plaintiff may attempt to show discrimination based on circumstantial evidence through the application of the *McDonnell Douglas* burden-shifting analysis established by the Supreme Court. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under the *McDonnell Douglas* framework, a plaintiff must first raise an

inference of discrimination by establishing a *prima facie* case. *See Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir.1997)).

In order to make out a *prima facie* case of discriminatory termination based on race, a plaintiff must show:

> (1) that [s]he is a member of a protected racial class, (2) that [s]he was qualified for the position, (3) that [s]he experienced an adverse employment action, and (4) that [s]he was replaced by someone outside of h[er] protected class or received less favorable treatment than a similarly situated person outside of h[er] protected class.

*Knott v. Grede II, LLC*, 2016 WL 375148, at *2 (S.D. Ala. Jan. 28, 2016) (quoting *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015)).  Here, the first prong is satisfied, as it is undisputed that Bowens is a member of a protected class.  There is also no claim that Bowens was not qualified to perform the teaching position for which she was hired. Defendants contend that Bowens did not suffer an adverse job action with regard to her pay or duties and privileges while employed, but Bowens clearly suffered an adverse job action when she was terminated or "non-renewed."

Defendants also contend that there is no evidence that similarly situated employees outside her classification were treated more favorably. To be an appropriate comparator, the employee must be "similarly situated in all aspects." *Holifield v. Reno*, 115 F.3d 1555, 1563 (11th Cir. 1997).  "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable

14

decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (internal citations omitted).  Bowens complained that Kellie Steele received preferential treatment, but as a tenured teacher she was clearly not similarly situated in all aspects.  Bowens asserts that she was treated less favorably than Ashley Knowles because Bowens was not informed during her termination meeting that she could apply to another position[1]. However, this does not appear to rise to the level of materially affecting the terms and conditions of her employment. There is no "bright-line test for what kind of effect on the plaintiff's 'terms, conditions, or privileges' of employment the alleged discrimination must have for it to be actionable" but "not all conduct by an employer negatively affecting an employee constitutes adverse employment action." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001) (citation omitted).  "[T]he employer's action must impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way." *Id.* at 1239.  The "asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." *Porterfield v. Soc. Sec. Admin.*, 2021 WL 3856035, at *5 (11th Cir. Aug. 30, 2021) (quoting *Davis* supra).  Here, the positions were posted, and Bowens admits she was aware of the job postings and did not apply for them. Thus, there was no tangible adverse effect on Bowens' employment. The Court agrees that Bowens has not

---

[1] Bowens provided no evidence to show that Knowles was informed that Knowles could apply for another position.

shown that a similarly situated employee outside her classification was treated more favorably.

Bowens contends that the fourth prong is met because her position was filled with an individual outside the protected class. The "Recommendation-to-Hire" form for when Ashley Knowles was hired in 2018 has "NA" typed in response to "Employee being replaced" but has "Aubrina Bowen" handwritten next to the "NA". (Doc. 35-13, PageID.597). Defendants contend that this argument ignores the fact that all non-tenured teachers in the alternative program, both black and white, were terminated. In fact, Ashley Knowles was non-renewed at the same time Bowens was non-renewed. It may be a stretch to say that Knowles replaced Bowens when Knowles was fired and rehired, but, if Knowles assumed the specific position that Bowens previously held, then Bowens' contention may be reasonable. Looking at the evidence in the light most favorable to Bowens the Court will presume that Knowles was rehired into Bowens' position. Accordingly, for the purpose of this summary judgment motion, the Court finds Bowens has met a *prima facie* case based on Bowens having been terminated and replaced by a person outside Bowens' protected class.

"Once the employee sets forth a *prima facie* case, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the employment decision." *Todd v. Fayette Cty. Sch. Dist.*, 2021 WL 2149351, at *9 (11th Cir. May 27, 2021). "[T]he employer's burden is merely one of production; it 'need not

16

persuade the court that it was actually motivated by the proffered reasons."
*Chapman v. AI Transport*, 229 F.3d 1012, 1024 (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)).  Here, Defendants claim that Bowens was not renewed because they decided not to renew <u>all</u> of the non-tenured teachers in all of the alternative programs.  This decision was reportedly made because Knott was concerned that the funding for the programs would be decreased; he had doubts about whether South West mental Health would continue to collaborate with the program; and they knew they would probably need to restructure the alternative programs and were uncertain of many details. Defendants have produced evidence to support that claim and the Court finds they have met their burden of proffering a nondiscriminatory reason for terminating Bowens.

If the Defendant proffers a legitimate reason for the employment decisions, "[t]he burden then shifts back to the plaintiff, who must show that the employer's proffered reasons are pretextual, or a cover for discrimination. *Hamilton v. Montgomery Cty. Bd. of Educ.*, 122 F. Supp. 2d 1273, 1280 (M.D. Ala. 2000).  "At the pretext stage, in order to survive summary judgment, Plaintiff must provide sufficient evidence to allow a reasonable fact finder to conclude, at a minimum, that the proffered reasons were not actually the motivation for the employer's decision." *Miller v. Bed, Bath & Beyond, Inc.*, 185 F.Supp.2d 1253, 1270 (N.D. Ala. 2002) (citing *Combs*, 106 F.3d at 1538.  Plaintiff may do this "(1) by showing that the

17

employer's legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, a discriminatory reason more likely motivated the decision." *Id.* (citations omitted). "This is done by pointing to 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence.' " *Hamilton*, 122 F. Supp.2d at 1281 (quoting *Combs*, 106 F.3d at 1539). The ultimate burden of persuasion always remains with the plaintiff in cases involving merely circumstantial evidence. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Bowens asserts that Defendants' claim that they were worried about funding is pretextual and unworthy of credence. Bowens argues that the Alternative School was never in danger of closing, that funding had been approved for three years and Defendants knew that funding was available when they decided not to renew Bowens. However, although funding had been verbally agreed to by the State, the actual contracts that provided the funding had to be entered into each year. The contract for the 2018-2019 school year was dated September 21, 2018, after Bowens' non-renewal in May 2018. Additionally, state funds are not the only source of support for the Alternative School and the STAR and COMPASS programs. Local funds are mainly used to support these programs. The fact that Cabaniss never thought the Alternative School was in danger of being closed does not mean that Defendants knew for certain that the programs would be fully funded and

supported in the same manner as they had been in the past.

Bowens also asserts that there are currently no African American teachers employed at Escambia Alternative School and that there have been numerous discrimination lawsuits settled by and complaints filed against Knott, Cabaniss, and the Board. (Doc.34-1, PageID.558-559).  However, Bowens cites no evidence to support these contentions.  Bowens has not attempted to support her claims with statistical or documentary evidence and these bare assertions do not create a triable issue concerning the employer's discriminatory intent. The Court finds that Defendants have proffered legitimate nondiscriminatory reasons for their actions and that Bowens has not shown that Defendants' reasons were pretextual or unworthy of credence.

### 2. Retaliation

Bowens claims Defendants retaliated against her for filing a complaint with the Escambia County Board of Education raising racial equity concerns. A claim of retaliation based on circumstantial evidence is analyzed under the same *McDonnell Douglas* burden-shifting framework as Bowens' claim of racial discrimination discussed above. See *Callahan v. City of Jacksonville, Fla.*, 2020 WL 914923, at *2 (11th Cir. Feb. 26, 2020).  To establish a *prima facie* case of retaliation, Bowens must show that:

> (1) she "engaged in a statutorily protected activity"; (2) she "suffered a materially adverse action"; and (3) there was a "causal relation between" the protected activity and the adverse action.

*Id.* (citation omitted). Here, Bowens asserts that she engaged in a statutorily protected activity when she emailed a complaint to the Escambia County Board of Education raising racial equity concerns.  The email requested that someone be hired to perform the duties that Mrs. Steele is performing so that Steele can do work that Bowens and Hall have had to perform. The email does not mention the race of Steele, Bowens or Hall. Nor does the email imply that there is any racial disparity in treatment.  The email does complain about the duties performed by Ms. Steele, who is white, as compared to those performed by Bowens and Mr. Hall, who are African American, but it does not point out their races.  Complaints about one's job duties "do not amount to opposition to racial discrimination and are not statutorily protected under the anti-retaliatory provisions of Title VII or section 1981." *Holiness v. Moore-Handley, Inc.*, 114 F. Supp. 2d 1176, 1186 (N.D. Ala. 1999). Thus, the Court finds Bowens has not established a *prima facie* case of retaliation. Even if Bowens' email could be construed as having raised racial concerns, the Court finds Plaintiff has proffered a legitimate non-discriminatory reason for terminating Bowens and that Bowens has failed to show pretext.

Bowens suffered an adverse employment action when she was terminated and her termination occurred in May 2018, the same month as Bowens' email, May 7, 2018.  With respect to the causal link element, the law is clear that "close temporal proximity may be sufficient to show that the protected activity and the adverse action were not wholly unrelated." *McCann v. Tillman*, 526 F.3d 1370, 1376

(11th Cir. 2008).  Thus, Bowens has established the other two prongs of a *prima facie* case.

As discussed above regarding Bowens' claim of racial discrimination, Defendants have proffered a legitimate nondiscriminatory reason for deciding to terminate Bowens. Bowens asserts that the timing of the complaint shows pretext, but while temporal-proximity arguments may be enough to establish a *prima facie* case of retaliation, "temporal proximity by itself generally cannot prove that an employer's proffered reasons are pretextual." *Todd v. Fayette Cty. Sch. Dist.*, 998 F.3d 1203, 1219 (11th Cir. 2021) (citation omitted).  Bowens also raises some of the same arguments she raised to support pretext regarding her disparate treatment claim, but those are unavailing for the same reasons discussed above. The Court finds that Bowens has not shown that Defendants' proffered legitimate nondiscriminatory reasons for terminating Bowens were pretextual or unworthy of credence.

## CONCLUSION

For the reasons stated above, Defendants' motion to strike (Doc.37), is **DENIED** and Defendants' motion for summary judgment (Doc.28), is **GRANTED.**

**DONE** and **ORDERED** this 4th day of April, 2022.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE

21